**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephanie McCollum, as Conservator for the minor wrongful death beneficiaries, on behalf of all wrongful death beneficiaries; and as Personal Representative of the estate of Marcela Baca,<br><br>Plaintiff,<br><br>v.<br><br>UPS Ground Freight Incorporated, et al.,<br><br>Defendants. | No. CV11-0961-PHX-DGC<br><br>**ORDER** |

On June 22, 2012, Defendant UPS Ground Freight, Inc. ("UPS Freight") filed a motion for partial summary judgment on Count 15 of Plaintiff's complaint (negligent hiring, negligent training, and negligent retaining). Doc. 64. Plaintiff does not oppose the motion. Doc. 76. Accordingly, the Court will grant the motion and dismiss Plaintiff's negligent hiring, training, and retaining claim against UPS Freight.

Also on June 22, 2012, Defendants UPS Freight, Alfredo Duenas, and Wilmer Santos-Maldonado filed a motion for partial summary judgment on Counts 10, 11, 12, 13, 14, and 16.[1] Doc. 62. Plaintiff filed a response to the motion on July 18, 2012. Doc. 73. Defendants have since filed a revised motion for partial summary judgment that complies with Local Rule of Civil Procedure 56.1 by citing to their statement of facts (Doc. 63),

---

[1] The "counts" referred to by Defendants appear to be the numbered paragraphs in Plaintiff's complaint. *See* Doc. 1-1, at 9-14. The paragraphs do not each set forth a separate claim to relief.

but is substantively identical to their original motion (Doc. 77). The Court will deny the original motion (Doc. 62) as moot and treat Plaintiff's response to the original motion (Doc. 73) as a response to the revised motion. The revised motion is fully briefed. Docs. 77, 63, 73, 74 68. For the reasons that follow, the Court will grant the motion in part and deny it in part.[2]

**I.   Background.**

On April 5, 2009, a collision occurred between a 2003 Freightliner tractor, operated on behalf of UPS Freight by Mr. Santos-Maldonado and Mr. Duenas, and a white 1994 Cadillac Eldorado, owned by Ms. Marcia Martinez and driven by 19-year-old Angel Hernandez. Doc. 63, ¶ 1. Mr. Duenas was operating the tractor at the time of the collision, and Mr. Santos-Maldonado was in the passenger seat. *Id.* ¶ 2. Marcela Baca died as a result of the crash. Mr. Duenas testified that he was traveling through the intersection with a green light when the white Cadillac sped through the intersection and he was unable to avoid it. *Id.* ¶ 3. The police determined that the tractor was traveling at 41 miles per hour and Cadillac was traveling at 59 miles per hour. *Id.* ¶ 4. The posted speed limit was 45 miles per hour. *Id.* The estate of Marcela Baca and Ms. Baca's children filed a complaint alleging various claims including violations of Federal Motor Carrier Safety Regulations, negligent maintenance and inspection, tortious operation of a motor vehicle, and wrongful death. Doc. 1-1, at 9-14. Plaintiff also seeks punitive damages. *Id.*

**II.   Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the

---

[2] Plaintiff's request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.   Analysis.**

   **A.   Negligent Operation of a Commercial Tractor.**

Plaintiff's overarching claim is negligent operation of the tractor.[3] Doc. 1-1, at 11, 13. Defendants argue that summary judgment is appropriate because Plaintiff has not produced any evidence to support their claim. Doc. 77, at 12. Defendants cite Mr. Duenas's driver's log, in which he reported being in the sleeper berth of the tractor from 11:00 p.m. the night before the accident until shortly before 1:00 p.m. the day of the accident. Doc. 77, at 12; Doc. 62-2, at 54-55. But merely being in the sleeper berth does not establish that Mr. Duenas was actually sleeping. As Plaintiff notes, Mr. Duenas's driver's log is contradicted by his statement to Officer Schwartz that he slept "one to one and a half hours" on the day of the accident and that he "was unable to clearly recall when he slept prior to that." Doc. 73, at 10; Doc. 74-2, at 24. This evidence presents a disputed issue of fact that must be resolved by a jury.

Defendants also argue that fatigue is a medical condition not within the ability of a

---

[3] Paragraph 10 of the complaint alleges that Mr. Duenas and Mr. Santos-Maldonado "did negligently, recklessly and with conscious disregard of a substantial risk of significant harm to others, operate their commercial tractor[.]" Doc. 1-1, at 11. Paragraph 16 of the complaint alleges that Mr. Duenas and Mr. Santos-Maldonado "did negligently, recklessly, and/or with conscious disregard for the safety of others operate the tractor and trailer in a fatigued condition[.]" *Id.* at 13. While Defendants treat these paragraphs as separate counts in their motion (*see* Doc. 77, at 5, 11), the Court will address the arguments together as one negligence claim.

layperson to diagnose, and that Plaintiff cannot prove her claims because she has not produced any expert opinions or medical literature. Doc. 77, at 12. Defendants rely on an unreported, out-of-circuit case for the proposition that summary judgment is appropriate on claims of fatigue when a plaintiff has not produced expert testimony. *See id.* (citing *Poe v. Ash Haulers, Inc.*, No. 1:10CV234-SA-JAD, 2011 WL 2711283 (N.D. Miss. July 12, 2011)). In *Poe*, the plaintiffs had established that the defendant did not eat breakfast or lunch on the day of the accident, but had otherwise "fail[ed] to cite to anything in the record, or any other type of relevant medical literature on the issue or a medical expert affidavit," and thus had not demonstrated a genuine issue as to whether the defendant was fatigued or sluggish while driving. *Poe*, 2011 WL 2711283, at *4.

Here, Plaintiff has raised a material factual dispute as to whether Mr. Duenas was fatigued by presenting evidence that he told Officer Schwartz he slept "one to one and a half hours" prior to the accident. *See* Doc. 74-2, at 24. Because fatigue based on lack of sleep is not an issue "beyond the common knowledge of the average layperson," the Court cannot conclude that expert testimony is required. *See United States v. Morales*, 108 F.3d 1031, 1039 (9th Cir. 1997); *United States v. Winters*, 729 F.2d 602, 605 (9th Cir. 1984); Fed. R. Evid. 702. The Court will deny summary judgment on Plaintiff's claim for negligent operation of a commercial tractor.

**B.     Federal Motor Carrier Safety Regulations.**

In Paragraph 11 of the complaint, Plaintiff alleges that Mr. Duenas and Mr. Santos-Maldonado were operating the truck in violation of the Federal Motor Carrier Safety Regulations ("FMCSR"). Doc. 1-1, at 12. Paragraph 12 alleges that, at the time of the collision, Mr. Duenas's driver/operator hours of service exceeded the FMCSR. *Id.* The complaint does not identify the specific regulations at issue. Plaintiff clarifies in its response to Defendants' motion that Mr. Duenas violated at least three federal regulations: 49 C.F.R. § 392.3, for driving a commercial motor vehicle while his alertness was so impaired by fatigue that it was unsafe for him to drive; 49 C.F.R. § 395.8, for maintaining a false log book that included the discrepancy in starting date and location,

- 4 -

understated the length of time spent undergoing vehicle inspection, and understated the daily mileage traveled; and 49 C.F.R. § 395.3(a)(1), which requires ten consecutive hours off-duty before driving. Doc. 73, at 12-13.

Regulations cannot create a private right of action; only statutes may create such a right. *See Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not. . . . Agencies may play the sorcerer's apprentice but not the sorcerer himself."); *see also Save Our Valley v. Sound Transit*, 335 F.3d 932, 937 (9th Cir. 2003) ("[O]nly *Congress by statute* can create a private right of action.") (emphasis in original). Because Plaintiff has no separate right of action for violation of the regulations she identifies, the Court will treat her FMCSR allegations as evidence in support of her negligence claim and will treat Defendants' motion for summary judgment as a motion for partial summary judgment under Rule 56(g) with respect to portions of the negligence claim. The Court expresses no opinion on whether evidence of the regulations or their violation would be admissible in support of the negligence claim at trial.

### 1. Section 392.3: Ill or Fatigued Operator.

Section 392.3 provides: "No driver shall operate a commercial motor vehicle . . . while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle." 49 C.F.R. § 392.3. Plaintiff claims that Mr. Duenas violated this section by driving a commercial motor vehicle while his alertness was impaired by fatigue. Doc. 73, at 12.

Defendants repeat much of the same argument they made with respect to Plaintiff's overarching negligence claim. They again cite Mr. Duenas's driver's log, in which he reported being in the sleeper berth until shortly before 1:00 p.m. on the day of the accident. Doc. 78, at 4. They again argue that fatigue is a medical condition not within the ability of a layperson to diagnose. *Id.* For the reasons discussed above, the

Court finds these arguments insufficient for a grant of summary judgment.

Defendants also cite a Phoenix Police Department Report filed by Officer David Schwartz, which states that "Mr. Duenas was not impaired for the purpose of operating a vehicle." Doc. 78, at 5; Doc. 74-2, at 25. Officer Schwartz based his statement on an eye test, a Romberg balance test, a walk and turn test, and a portable breath test, but Defendants have presented no evidence that these tests measure fatigue. Doc. 74-2, at 24-25.

### 2. Section 395.8: Driver's Record of Duty.

Section 395.8 requires every driver used by a motor carrier, excluding private carriers, to record their status for each 24 hour period using certain prescribed methods. 49 C.F.R. § 395.8. Subsection 395.8(e) provides that the "making of false reports in connection with such duty activities [recorded pursuant to this section] shall make the driver and/or the carrier liable to prosecution." Plaintiff claims that Mr. Duenas violated this section "by maintaining an objectively false log book including the discrepancy of starting the day in Cas[a] Grande, understating length of time for vehicle inspection, and daily mileage traveled." Doc. 73, at 12.

Defendants argue that Plaintiffs have failed to produce expert reports or opinions explaining how Mr. Duenas allegedly violated this regulation. While expert testimony may be useful in helping a jury understand the FMCSR, as evidenced by the cases cited in Defendants' motion (Doc. 77, at 9), the Court is not persuaded that Plaintiff can establish a violation of Section 395.8 only through experts. The concept of a false report does not appear to be beyond the ken of an average juror.

Defendants also argue that Rule 56(c)(1)(A) requires that a party support an opposition to summary judgment with sworn testimony or statements, and that the reports of the investigating officers cited by Plaintiff are insufficient because they are not depositions or affidavits. On the contrary, Rule 56(c) simply requires that a party making a factual assertion support that assertion by "citing to particular parts of materials in the record, including depositions, documents, . . . affidavits or declarations, . . . or other

materials[.]" Fed. R. Civ. P. 56(c)(1)(A). Plaintiff alleges that Mr. Duenas and Mr. Santos-Maldonado carried log books that show "objectively false entries, gross inaccuracies and serious safety omissions." Doc. 74, at 8. ¶¶ 41, 42. To support this assertion, Plaintiff cites the drivers' log books and depositions. Doc. 74-3 (Duenas Depo.); Doc. 74-7 (Duenas's driver's log); Doc. 74-8 (Santos-Maldonado's driver's log). This is sufficient to oppose summary judgment.

### 3. Section 395.3: Maximum Driving Time.

Section 395.3(a)(1) provides that, at the "[s]tart of work shift," a driver "may not drive without first taking 10 consecutive hours off duty." 49 C.F.R. § 395.3(a)(1). Plaintiff claims that this fact "will be proven through the testimony of Officer Schwartz." Doc. 73, at 13.

There is no evidence in the record indicating that Officer Schwartz, one of the officers who reported to the scene of the accident, will be able to testify whether Plaintiff took 10 consecutive hours off duty before beginning his shift. Moreover, Mr. Duenas's driver's log indicates that he was in the sleeper berth from approximately 11:00 p.m. the night before the accident until shortly before 1:00 p.m. on the day of the accident. Doc. 74-7, at 9-10. While Plaintiff has presented evidence that Mr. Duenas may have only slept for one to one and a half hours on the day of the accident (Doc. 74-2, at 24), the requirement that a driver take 10 consecutive hours off duty does not mean that the driver was required to sleep for a specific amount of time. The Court will grant summary judgment on this aspect of the negligence claim under Rule 56(g) because Plaintiff has not made a showing sufficient to establish that Mr. Duenas did not take 10 consecutive hours off duty before starting his shift. *Celotex*, 477 U.S. at 322.

### C. Negligent Maintenance and Inspection.

In Paragraphs 13 and 14, Plaintiff asserts a claim for negligent maintenance based on the condition of the tractor's tires and Defendants' alleged failure properly to inspect and maintain the tractor. Doc. 1-1, at 12. Defendants move for summary judgment because Plaintiff has not shown a causal connection between any alleged defect in the

tractor and the cause of the accident. Doc. 77, at 10. *See Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007) (requiring "a causal connection between the defendant's conduct and the resulting injury" to establish a claim for negligence). Plaintiff agrees that there is no showing that the bald tire contributed to the collision. Doc. 73, at 14. The Court will grant summary judgment in favor of Defendants on Plaintiff's negligent maintenance and inspection claim.

### D.     Punitive Damages.

To recover punitive damages under Arizona law, a plaintiff must prove by clear and convincing evidence that the defendant engaged in aggravated and outrageous conduct with an "evil mind." *Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn*, 907 P.2d 506, 518 (Ariz. App. 1995). Something more than the commission of a tort is required before a defendant can be held liable for punitive damages. *Gurule v. Ill. Mut. Life & Cas. Co.*, 734 P.2d 85, 87 (Ariz. 1987) (citing *Rawlings v. Apodaca*, 726 P.2d 565, 578 (Ariz. 1986)). An evil mind "may be found where defendant intended to injure the plaintiff. It may also be found where, although not intending to cause injury, defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Rawlings v. Apodaca*, 726 P.2d 565, 578 (Ariz. 1986).

"The standard articulated in *Rawlings* requires more than 'reckless indifference.'" *Gurule*, 734 P.2d at 88 (citation omitted); *see Rawlings*, 726 P.2d at 578 ("Indifference to facts or failure to investigate are sufficient to establish the tort of bad faith but may not rise to the level required by the punitive damage rule."). "Although the element of a tortfeasor's intent may be inferred, a plaintiff must always prove 'outwardly aggravated, outrageous, malicious, or fraudulent conduct.'" *Saucedo ex rel. Sinaloa v. Salvation Army*, 24 P.3d 1274, 1277 (Ariz. App. 2001) (citing *Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 680 (Ariz. 1986)).

In Paragraph 10, Plaintiff claims that Mr. Duenas and Mr. Santos-Maldonado operated the tractor "negligently, recklessly and with conscious disregard of a substantial risk of significant harm to others . . . so as to cause it to crash into the vehicle in which

Marcela Baca was a passenger[.]" Doc. 1-1, at 11. Defendants argue that there is no evidence in the record to show that Mr. Duenas was motivated by an evil mind. Doc. 77, at 6-7. They claim that the only factual dispute is whether Mr. Duenas had a green light as he proceeded through the intersection, and that even if the light was red, Plaintiff has not produced any evidence showing that Mr. Duenas consciously disregarded a substantial risk that traveling through the intersection might cause significant injury. *Id.* at 7.

In response, Plaintiff argues that Mr. Duenas cannot claim that the light was green when he passed through the intersection because he was convicted in the City of Phoenix Municipal Court of serious physical injury or death by a moving violation and received enhanced punishment for running a red light. *Id.*; *see* A.R.S. § 13-807 ("A defendant who is convicted in a criminal proceeding is precluded from subsequently denying in any civil proceeding brought by the victim or this state against the criminal defendant the essential allegations of the criminal offense of which he was adjudged guilty, including judgments of guilt resulting from no contest pleas."). Plaintiff argues that Defendants have "offer[ed] no explanation" for why Mr. Duenas maintained a speed of approximately 43 miles per hour while driving up to and through the intersection. Doc. 73, at 11.

Plaintiff also points to "gross errors and omissions" in Mr. Duenas's log book. *Id.* Mr. Duenas testified that his being tired contributed to these errors, but Plaintiff argues that a jury could conclude that being paid by the mile, with no electronic monitoring, was an incentive for the inaccurate log books. *Id.* *See* Doc. 74-3, at 18 (Duenas Depo. 124:16-22 ("Q: Was there a GPS system in this tractor that could track your speed or location? A: No. Q: Was the only way that UPS monitored your whereabouts was to wait for Mr. Maldonado to call in twice a day? A: Correct.")). Plaintiff claims that Mr. Duenas "consciously pursued a course of conduct that he knew would create a substantial risk of significant harm to others by repeatedly falsifying his log books by (1) driving while he should have been out of service; (2) understating the length of time for vehicle

safety inspections; and (3) failing to document a bald tire that would have taken the Freightliner out of service." *Id.* at 11.

The evidence in the record confirms that there were no entries in the Vehicle Condition Report indicating a bald tire on the right rear axle which Plaintiff claims would have placed the tractor out of service, and that Mr. Duenas entered two separate driver's log entries for April 3, 2009. Doc. 74, at 8, ¶ 41; Doc. 74-7 (Duenas's driver's log); Doc. 74-8 (Santos-Maldonado's driver's log). The record also confirms that Mr. Duenas told Officer Schwartz that their day began in Casa Grande, Arizona, while the log books show their drive began in Plateu, Texas the night before. Doc. 74-2, at 24; Doc. 74-7, at 9. Mr. Duenas acknowledged that he recorded vehicle inspections as taking three minutes when they in fact took at least fifteen minutes to perform. *See generally* Doc. 743, at 3 (Duenas Depo. 62-65). Finally, Mr. Duenas told Officer Schwartz that he had slept "one to one and a half hours" on the day of the accident. Doc. 74-2, at 24.[4]

A jury could find that Mr. Duenas's conduct of driving a tractor in an arguably fatigued state through an intersection with a red light, combined with the deficiencies in Defendants' driver's logs, manifests a conscious disregard of a substantial risk of significant harm to others. *Rawlings*, 726 P.2d at 578. The Court will therefore deny summary judgment on Plaintiff's claim for punitive damages.

**IT IS ORDERED:**

1. Defendant UPS Ground Freight, Inc.'s motion for partial summary judgment on Plaintiff's claim for negligent hiring, training, and retaining (Doc. 64) is **granted**.

2. Defendant's revised motion for summary judgment (Doc. 77) is **granted in part and denied in part**. The Court grants summary judgment in favor of Defendants on Plaintiff's negligent maintenance and inspection claim and the portion of the negligence

---

[4] The Court has been unable to locate evidence in the record to support Plaintiff's allegation that "there were repeated omissions for the number of miles that Duenas drove and the total daily miles driven between the two drivers." Doc. 74, at 8, ¶ 41.

- 10 -

claim that rests on violation of 49 C.F.R. § 395.3(a)(1). The Court denies summary judgment on Plaintiff's claims for negligent operation of a commercial tractor and punitive damages.

3. The Court will set this matter for final pretrial conference by separate order.

Dated this 30th day of August, 2012.

David G. Campbell
United States District Judge