**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gabriel Martinez and Donal Childers as conservator for Cruz Baca Soto,<br><br>Plaintiffs,<br><br>v.<br><br>UPS Ground Freight Incorporated, et al.,<br><br>Defendants. | No. CV-11-0961-PHX-DGC<br><br>**ORDER** |

This case is currently in the midst of a jury trial. When Plaintiffs rested today, Defendants moved under Federal Rule of Civil Procedure 50 for judgment as a matter of law on Plaintiffs' punitive damages claim. The Court heard oral arguments from both sides, took the matter under advisement, and will now grant the motion.

**I.     Legal Standards.**

A motion for judgment as a matter of law "should be granted only if 'there is no legally sufficient basis for a reasonable jury to find for that party on that issue.'" *Winarto v. Toshiba Electronics Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000)). In ruling on the motion, the Court "is not to make credibility determinations or weigh the evidence and should view all inferences in the light most favorable to the nonmoving party." *Id*. The Court must "'disregard all evidence favorable to the moving party that the jury is not required to believe.'" *Id*. (quoting *Reeves*, 530 U.S. at 151). The Court "'may not substitute its view of the evidence for that of the jury.'" *Id*. (quoting *Johnson v. Paradise*

*Valley Unified Sch. Dist.,* 251 F.3d 1222, 1227 (9th Cir. 2001)).

Both sides agree that Arizona law governs the claim for punitive damages. The Arizona Supreme Court has provided this explanation of circumstances that will justify an award of punitive damages:

> Punitive damages are awarded in order to punish the wrongdoer and deter others from emulating the same conduct. *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 330, 723 P.2d 675, 679 (1986). The focus is on the wrongdoer's attitude and conduct. *Id.; Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565 (1986). The punitive damages standard in Arizona requires "something more" than gross negligence. *Rawlings,* 151 Ariz. at 161, 726 P.2d at 577. The "something more" is the evil mind, which is satisfied by evidence "that defendant's wrongful conduct was motivated by spite, actual malice, or intent to defraud" or defendant's "conscious and deliberate disregard of the interest and rights of others." *Gurule v. Illinois Mut. Life and Casualty Co.,* 152 Ariz. 600, 602, 734 P.2d 85, 87 (1987).
>
> To obtain punitive damages, a plaintiff must prove that "defendant's evil hand was guided by an evil mind." *Rawlings,* 151 Ariz. at 162, 726 P.2d at 578. This "evil mind" element may be shown by either 1) evil actions; 2) spiteful motives; or 3) outrageous, oppressive or intolerable conduct that creates substantial risk of tremendous harm to others. *Linthicum,* 150 Ariz. at 330, 723 P.2d at 679; *Gurule,* 152 Ariz. at 602, 734 P.2d at 87. . . .
>
> This court has expressly rejected awarding punitive damages based on gross negligence or mere reckless disregard of the circumstances. *Linthicum,* 150 Ariz. at 331, 723 P.2d at 680; *Gurule,* 152 Ariz. at 603, 734 P.2d at 88.

*Volz v. Coleman Co., Inc.*, 748 P.2d 1191, 1194 (Ariz. 1987). In addition, a defendant's evil mind must be established by clear and convincing evidence. *Id.*

**II.   Analysis.**

Plaintiffs claim that Defendants are liable for punitive damages because they satisfy the third category of evil mind – "outrageous, oppressive or intolerable conduct that creates substantial risk of tremendous harm to others." *Id.* They claim that this standard is satisfied because the driver at the time of the accident, Alfredo Duenas, was driving while fatigued and therefore "consciously pursued a course of conduct knowing

that it created a substantial risk of significant harm to others." *Rawlings*, 726 P.2d at 578.

The Court denied Defendants' motion for summary judgment on punitive damages because Plaintiffs claimed to possess substantial evidence that Mr. Duenas knowingly drove while fatigued and even kept an inaccurate driver's log to conceal that fact. Doc. 81 at 8-10.  As the case approached trial, however, it became clear that the alleged errors in the driver's log were not evidence of fatigue or a knowing disregard of fatigue, but instead were, according to Plaintiffs, evidence that Mr. Duenas and his companion driver, Wilmer Maldanado, disregarded various safety standards unrelated to fatigue. The Court excluded this evidence before trial because the disregarded safety standards were not related to the cause of the accident.  They were not a proximate cause of the accident, and therefore were not relevant under Arizona law. *See Saucedo ex rel. Sinaloa v. Salvation Army*, 24 P.3d 1274, 1279 (Ariz. App. 2001) (recognizing an "overarching principle . . . that the conduct giving rise to punitive damages must be a proximate cause of the harm inflicted."); Doc. 132.

In response to Defendants' Rule 50 motion, the Court asked Plaintiffs' counsel to identify every item of evidence that supports Plaintiffs' claim for punitive damages.  He identified the following, stated in the light most favorable to Plaintiffs: (1) Mr. Duenas was a commercial truck driver; (2) on the day of the accident, he and Mr. Maldanado were completing an eight-day trip that covered more than 8,000 miles, a length Mr. Maldanado confirmed to be a long trip; (3) Mr. Duenas and Mr. Maldanado forgot to drop off the bills of lading for their final load when they left the load at the UPS yard in Phoenix, and therefore they were required to turn around and return to the yard; (4) Mr. Duenas caused the accident while returning to the yard when he ran a traffic light that had been red for 30 to 40 seconds; (5) the bills of lading were in plain view on the dashboard of the truck when the drivers forgot to leave them at the yard; (6) Mr. Duenas told an investigating officer that he had slept between one hour and ninety minutes on the day of the accident, and did not recall how long he had slept before that time; (7) Mr. Duenas told the investigating officer that he and Mr. Maldanado had started the day in Casa

Grande, Arizona, when in fact it started in Texas; and (8) there was a four-hour discrepancy between Mr. Duenas' log book description of when they arrived in Phoenix and Mr. Maldanado's log book.

In deciding whether this evidence could reasonably be viewed as clear and convincing evidence of an evil mind, the Court must disregard evidence favorable to Defendants that the jury is not required to believe. *Winarto*, 274 F.3d at 1283. But the Court may consider evidence that is not rebutted. For example, Plaintiffs presented evidence that the gate log at the Phoenix UPS yard showed that the truck arrived at 12:29 or 12:30 p.m. on the day of the accident, which is largely consistent with Mr. Duenas' log book recording that the truck arrived at 12:45 p.m. It was Mr. Maldanado's log book that said they arrived at 8:30 a.m., a four-hour discrepancy. This may reflect fatigue on the part of Mr. Maldanado, but not Mr. Duenas.[1]

In addition, Detective Schwartz gave the following testimony about his interview with Mr. Duenas regarding recent sleep:

> I did ask him questions about whether or not he had been drinking in the last 24 hours, whether or not he had been taking medications or drugs, and I asked him some questions about his sleep habits or recent sleep history. He told me that the last time he had slept was at 12:45 in the afternoon where he had woken up from a nap which he believed was about one to one and a half hours long. I tried to ask some follow-up questions since that was kind of a mid-day nap, something unusual for me to hear. I tried to ask questions when he slept prior to that. Maybe he slept the previous evening, and he seemed to have some difficulty recalling exactly when it was he had last slept prior to that. So I simply just moved on to another – I didn't really press him on that issue and just moved on to the other questions in the

---

[1] Plaintiffs' counsel noted during oral argument that Mr. Duenas testified during his deposition in 2012 that he was awake when the truck arrived at the Phoenix facility at 8:30 a.m., but this testimony occurred immediately after Plaintiffs' counsel had used Mr. Maldanado's inaccurate log book to refresh Mr. Duenas' recollection – three years after the accident – as to when they arrived at the Phoenix facility. On the day of the accident, according to the testimony of Detective Schwartz, Mr. Duenas said he awoke at 12:45 p.m., which is consistent with his estimated time of arrival and largely consistent with the facility's gate log. The Court is not persuaded that any reasonable juror could conclude that the truck arrived at 8:30 a.m. and that Mr. Duenas' estimate was four hours off; it appears certain from the facility's gate log that the truck arrived around the time stated by Mr. Duenas.

investigation.

Court's Livenote Transcript, 1/15/16 at 221.  Detective Schwartz thus did not say that he questioned Mr. Duenas thoroughly on the time he last slept.  The detective instead said he "moved on" and did not press Mr. Duenas on this issue.  Moreover, Mr. Maldanado testified that Mr. Duenas was in the sleeper birth as they passed through Las Cruces, New Mexico the night before on their way to Phoenix.[2]

Detective Schwartz testified that Mr. Duenas said they started their day in Casa Grande, Arizona.  Mr. Maldanado testified that they started the night before in Plateau, Texas.  Plaintiffs argue that Mr. Duenas therefore got the starting point wrong, a fact that reflected his fatigue.  But Plaintiffs' counsel never asked Detective Schwartz exactly what he meant when he asked Mr. Duenas where they "started their day."  With a mid-day arrival in Phoenix, it is at least possible that Mr. Duenas viewed the "day" as starting south of Phoenix in Casa Grande, rather than the night before in Texas.  Because the Court must view the evidence in the light most favorable to Plaintiffs, however, the Court will assume Mr. Duenas got the starting point wrong.

Two other points are relevant.

First, although Plaintiffs claim that Mr. Duenas' fatigue was shown by his answer to Detective Schwartz's question about where the day started, Detective Schwartz testified that he tested Mr. Duenas for impairment and found none.  Plaintiffs argue that this is because Mr. Duenas had been in an accident and had been standing at the scene for an hour.  But if this is true, then his answer about where the day started would not have resulted from fatigue.  Plaintiffs cannot have it both ways – they cannot claim that Mr. Duenas got the day's starting point wrong because he was fatigued during the interview with Detective Schwartz, and yet also assert that he showed no impairment during the

---

[2] Defendants note that Mr. Duenas testified that he was in the sleeper birth for 12 hours before the truck arrived in Phoenix and that he slept for 10 of those hours.  His log book shows him in the sleeper birth for this amount of time.  But Defendants' objected successfully to introduction of the log book, so it is not before the jury and cannot be considered.  Nor can the Court consider Mr. Duenas' testimony about 10 hours of sleep when the jury is not required to accept it as true.

- 5 -

interview because the intervening accident woke him up.

Second, although it is true that Mr. Maldanado testified that 8,000 miles is a long trip, he disagreed when Plaintiffs' counsel suggested that such a trip would leave him tired. He testified that he slept in the sleeper birth while Mr. Duenas was driving. And he did not recall Mr. Duenas ever suggesting that Duenas was worn out from the trip.

With these considerations in mind, the jury has before it the following evidence: Mr. Duenas ran a red light and caused the death of Plaintiffs' mother; the light had been red for 30-40 seconds; Mr. Duenas had slept between one hour and ninety minutes before the accident; when asked by Detective Schwartz when he had slept before that, Mr. Duenas "had difficulty recalling exactly" and so Detective Schwartz moved on and did not press the issue; Mr. Duenas was not impaired when tested by Detective Schwartz; Mr. Duenas was a commercial truck driver; he and Mr. Maldanado were completing an eight-day trip of more than 8,000 miles, a length Maldanado confirmed to be a long trip; Mr. Duenas and Mr. Maldanado forgot to drop off bills of lading even though they were on the dashboard of the truck in plain view; Mr. Duenas told the investigating officer that they had started the day in Case Grande, Arizona, when in fact they had driven straight through from Texas the night before.

With one exception, these facts amount to nothing more than negligence. Running a red light, forgetting to turn in papers, driving a long distance with two drivers and a sleeper birth, and getting the point of origin wrong may evince negligence, but they show nothing more. The one exception is Mr. Duenas' statement to Detective Schwartz that he had slept only one hour to ninety minutes before the accident and could not precisely recall when he had slept before that. Mitigating this fact somewhat is Maldanado's uncontradicted testimony that Duenas was in the sleeper birth as they passed through Las Cruces, New Mexico the night before, as well as the fact that Detective Schwartz did not press the issue when Duenas could not precisely recall when he had last slept. The lack of sleep suggested by Duenas' statement to Detective Schwartz, viewed in the light most favorable to Plaintiffs, could nonetheless constitute gross negligence or even reckless

disregard for the safety of others.  As the Arizona Supreme Court has held, however, gross negligence and reckless disregard cannot support an award of punitive damages. *See Volz*, 748 P.2d at 1194.  "The punitive damages standard in Arizona requires 'something more' than gross negligence.  The 'something more' is the evil mind, which is satisfied by evidence that defendant's wrongful conduct was motivated by spite, actual malice, or intent to defraud[,] or defendant's conscious and deliberate disregard of the interest and rights of others." *Id.* (citations and quotation marks omitted).

The "something more" required by Arizona law is lacking here.  Plaintiffs have presented no evidence that Duenas acted with an evil mind – with spite, actual malice, or an intent to harm.  And they have presented scant evidence of a "conscious and deliberate" disregard of the safety of others.  Although Plaintiffs' evidence could be viewed as suggesting Duenas was fatigued at the time of the accident, there is no evidence that he "consciously and deliberately" chose to drive in an impaired condition. The undisputed evidence shows that Maldanado had been driving from Texas to Arizona, that there was a sleeper birth in the truck for Duenas, that Duenas was in the birth the night before in New Mexico and just before the truck arrived in the Phoenix yard, and that it was Duenas' turn to drive when they headed from Phoenix to California.  This is not a case where the drivers were drinking or using drugs.  There is no evidence of a conscious and deliberate intent to drive while fatigued.

Even if a juror could view Duenas' comment to Detective Schwartz as suggesting that Duenas had not slept in many hours and knew so – something that appears inconsistent with the two-driver, sleeper-birth arrangement for this trip – the comment certainly does not amount to clear and convincing evidence of an evil mind.  Plaintiffs have not satisfied the high standard of proof required for punitive damages in Arizona.

The Court concludes that there is no legally sufficient basis for a reasonable jury to find in favor of Plaintiffs on punitive damages. *Winarto*, 274 F.3d at 1283.  The Court accordingly will grant Defendants' motion for judgment as a matter of law on punitive damages.

**IT IS ORDERED** that Defendants' motion for directed verdict on punitive damages (Doc. 138) is **granted**.

Dated this 16th day of January, 2013.

David G. Campbell
United States District Judge